IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARTIS CAVER, | ) | CASE NO. 1:12CV1165 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| JASON BUNTING, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | Doc. No. 5 |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is respondent's motion to dismiss as untimely the petition for a writ of habeas corpus filed by Artis Caver ("Caver") pursuant to 28 U.S.C. § 2254.  Doc. No. 5. Caver, represented by counsel, does not oppose respondent's motion.  For the reasons given below, respondent's motion to dismiss the petition as untimely should be GRANTED.

I

The state appellate court hearing Caver's direct appeal found the following facts to be relevant to his case:

> {¶ 2} The record before us demonstrates the following. Caver became the pastor of Harvest Missionary Baptist Church in Cleveland in September 1990.  When he began his pastoral duties, the church was struggling with its finances and

membership. During his tenure, Caver was able to significantly increase the membership and improve the financial position of the church.

{¶ 3} Also during his tenure at the church, in 1998, Caver began operating AFC Charters, a private for-profit bus company. The charges in this case stem from Caver's transactions with AFC Charters vis-a-vis the church. Specifically, appellant commingled the church's money with money from his business. Voluminous documentation was admitted into evidence tracing this commingling of funds. The funds were commingled via wire transfers and blank checks written by church trustees that appellant would then negotiate for his personal and/or business use.

{¶ 4} The record demonstrates that AFC Charters was in trouble financially and appellant used church funds to pay the company's creditors. For example, in 2002, one of the company's main creditors threatened to repossess buses Caver had leased or bought. At the same time, the church, with its growing membership, had outgrown its building and was in the process of trying to build a new church. Caver obtained a $200,000 loan from Geauga Savings Bank, for which he mortgaged the church, which at that point was "free and clear."

{¶ 5} Three elderly members of the congregation, Clara Thomas,[FN1] Johnny Bozeman, and Jackson McCintosh, signed (as church trustees [FN2] and personally) for the loan. Documentation showed that $100,000 of the $200,000 loan was directly wired to a creditor of the bus company. The remaining $100,000 was withdrawn by appellant and was unaccounted for.[FN3]

FN1. Thomas was unable to testify at trial because of physical limitations.

FN2. Bozeman signed as a trustee although he in fact was not.

FN3. Shortly after obtaining the loan, however, appellant signed a lease for a downtown office, defaulted on the lease, and had a $145,480 judgment entered against him.

{¶ 6} Bozeman testified that it was his understanding that the loan was going to be used for a new church building, and he would not have signed for it if he had known it was going to be used for appellant's bus company. McCintosh testified that appellant told him the loan was for the bus company, to build equity in the company, which would then be used as collateral for the new church building. McCintosh further testified that at Caver's request, he would cash church checks and give the money to Caver.

{¶ 7} In obtaining the loan, Caver presented an "authority letter" to the bank; the letter stated that the church had authorized the loan. The testimony at trial revealed, however, that neither the congregation, generally, nor the trustees,

2

specifically, knew of or authorized the letter.

{¶ 8} Caver's actions came to light in January 2003, when a church member who worked for the Cuyahoga County Clerk of Courts saw that a lien had been filed against the church for failure to make its mortgage payments. In February 2004, a church member's son discovered while on the internet that the church was in foreclosure and about to be sold at sheriff's sale.

*2 {¶ 9} Charles Richardson, a financial consultant who was hired by Caver to assist with the new church building and the bus company, testified that he advised appellant to stop commingling the church's and the company's funds, even if Caver had the church's authorization to do so, as Caver had represented to him. Richardson denied that he told Caver to use church property to build equity in the bus company, which would then be used to help finance the new church. Richardson terminated his relationship with appellant after he saw the office space appellant had leased after obtaining the $200,000 loan.

{¶ 10} Caver testified that, as pastor, he had full financial authority and could commingle the church's and bus company's funds. He maintained that he acted on Richardson's (his financial adviser) advice. He also maintained that the purpose of the 2002 loan was fully explained to the signators, and the trustees were fully aware of the money transfers.

{¶ 11} The county prosecutor began investigating Caver sometime after the congregation learned of his actions, and the case was turned over to the sheriff's office in 2006. The indictment against Caver was returned on November 30, 2007, and contained one count of theft, 21 counts of money laundering, three counts of perjury, and one count of forgery.

{¶ 12} Upon Caver's request, the original trial date was continued until April 16, 2008. On March 19, 2008, Caver filed another motion to continue the trial because of the voluminous documentation in the case. The court denied the motion. On April 10, appellant filed another motion to continue, based on the same ground as the March 19 motion. The court denied the motion, noting that "[t]he State of Ohio informed defense counsel at 1/8/08 [pretrial] and 1/30/08 [pretrial] that there are multiple boxes of discovery in this case and they needed notice to have it copied in a timely manner. Court has been advised that said discovery was delivered to defense, upon request."

{¶ 13} On April 16, the day of trial, Caver filed a motion to dismiss, which was denied that same day. The case proceeded to a jury trial. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. After presenting a defense, Caver renewed his Crim.R. 29 motion, and it was again denied. The jury found him guilty of all but one count (count 15, money laundering), and he was sentenced to a total 16-year term of

incarceration.

*State v. Caver*, Slip Copy, 2009 WL 726145, at *1-*2 (Ohio App. March 19, 2009).

Caver timely file a notice of appeal. In his breif in support of his appeal, Caver asserted the following assignments of error:

> I.     Defendant was denied due process of law when the court, without a hearing, overruled defendant's motion to dismiss the indictment where various counts, on their face, showed that they were barred by the applicable statute of limitations.
>
> II.     Defendant was denied due process of law when the court refused to grant a continuance based upon the production of discovery documents.
>
> III.     Defendant was denied due process of law when he was not informed of the nature of the offense by reason of the identically worded counts involving money laundering.
>
> IV.     Defendant was denied his Sixth Amendment right to present a defense when the court precluded reference to the civil case.
>
> V.     Defendant was denied due process of law and a fair trial when he was questioned about a claimed 1987 misdemeanor conviction in Illinois.
>
> VI.     Defendant was denied a fair tribunal by reason of the actions, comments and inferences by the court.
>
> VII.     Defendant was denied a fair trial and his right to assistance of counsel when the court unduly restricted counsel's closing argument and failed to take corrective action concerning improper prosecutorial argument.
>
> VIII.     Defendant was denied due process of law when the court failed to fully state all elements and definitions for the money laundering counts.
>
> IX.     Defendant was denied due process of law when the court did not require the jury, in its verdicts on money laundering to make a finding of value for the money laundering element of corrupt activity.
>
> X.     Defendant was denied due process of law when jury unanimity was not required in order to find defendant guilty of theft.
>
> XI.     Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.

> XII.   Defendant's right under the First Amendment and The Ohio Constitution violated his right to freedom of religion [sic].
>
> XIII.   Defendant was denied due process of law when he was sentenced for money laundering indictments which did not allege a culpable mental state.
>
> XIV.   Defendant was denied his constitutional right and due process of law when the court based the sentencing on religious precepts.
>
> XV.   Defendant was denied his rights under the Fifth Amendment when the court sentenced defendant for a lack of acceptance of responsibility and lack of remorse.
>
> XVI.   Defendant was denied due process of law and his rights under the Sixth Amendment when the court imposed a sentence based upon its own fact-finding and other impermissible considerations.

On March 19, 2009, the state appellate court overruled Caver's assignments of error and affirmed the judgment of the trial court.  Caver moved for reconsideration.  The state appellate court denied reconsideration but clarified its judgment regarding assignment of error XIII.

Caver filed a timely notice of appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Caver asserted fifteen propositions of law, consisting of essentially of assignments of error two through sixteen asserted in the state appellate court.  On August 26, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On March 30, 2009, Caver moved in the state appellate court for certification of a conflict regarding his claimed state of limitations violation.  The appellate court granted this motion on April 26, 2009.  Caver timely filed a notice of conflict in the Ohio Supreme Court.  Upon the state's motion to dismiss, the Ohio Supreme Court dismissed the case

on August 26, 2009 after finding that no conflict existed.

On May 10, 2012, Caver filed in this court a petition for a federal writ of habeas corpus. Caver raises two grounds for relief in his petition:

> GROUND ONE: Petitioner was denied due process when his request for a continuance was denied by the trial court immediately after the prosecution produced last minute discovery.
>
> GROUND TWO: Petitioner was denied due process of law when he was not adequately informed of the nature of his offense by identically worded counts alleging money laundering.

Respondent now moves to dismiss Caver's petition as time barred. Caver does not oppose respondent's motion.

II

*A. Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Caver. Caver filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). Cuyahoga County is within this court's geographic jurisdiction. This court has geographic jurisdiction over Caver's petition.

6

*B. Statute of Limitations*

Respondent argues that Caver's petition is barred by the statute of limitations. The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) ("§ 2244(d)(1)").

The Ohio Supreme Court entered final judgment against Caver on August 26, 2009.  The statutory period began to run on August 27, 2009, and that period expired on August 28, 2010.

Caver filed his petition for a writ of habeas corpus on May 10, 2012, more than one and a half years after expiration of the statutory period for filing a timely petition. Caver's petition, therefore, is untimely.  Caver does not argue that the running of the statutory period should be equitably tolled.  Accordingly, respondent's motion to dismiss Caver's petition should be granted.

III

For the reasons given above, respondent's motion to dismiss Caver's petition

7

should be GRANTED and Caver's petition dismissed with prejudice.


Date: September 11, 2012 /s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.